IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SUSAN L. SPRIGGS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil No. 15-cv-1117-JPG-CJP |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM and ORDER

In accordance with 42 U.S.C. § 405(g), plaintiff Susan L. Spriggs seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for DIB in April 2012, alleging disability beginning on August 29, 2011. After holding an evidentiary hearing, ALJ Paul R. Armstrong denied the application in a written decision dated January 31, 2014. (Tr. 23-32). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

## Issue Raised by Plaintiff

Plaintiff raises the following issue:

1. The ALJ erred in failing to identify and resolve conflicts between the testimony of the vocational expert and information contained in the *Dictionary of Occupational Titles*.

## Applicable Legal Standards

To qualify for DIB, a claimant must be disabled within the meaning of the applicable

1

statutes. For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. §§ 404.1572.

In order to receive DIB, plaintiff must establish that she was disabled as of her date last insured. *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir. 1997).

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to

2

be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. §§ 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984). *See also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether Ms. Spriggs was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. See, *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)).

The Supreme Court has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 91 S. Ct. 1420, 1427 (1971). In reviewing for "substantial evidence," the entire administrative record is

3

taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Murphy v. Colvin,* 759 F.3d 811, 815 (7th Cir. 2014). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

### The Decision of the ALJ

ALJ Armstrong followed the five-step analytical framework described above. He determined that plaintiff had not been engaged in substantial gainful activity since the alleged onset date. She was insured for DIB through December 31, 2016. The ALJ found that plaintiff had severe impairments of degenerative disc disease, obesity, and left shoulder tendonitis. He further determined that these impairments do not meet or equal a listed impairment.

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform work at the sedentary exertional level, limited to standing or waking for two out of eight hours, sitting for six out of eight hours, a sit/stand option at will, and no overhead work with the left (non-dominant) arm. Based on the testimony of a vocational expert, the ALJ found that plaintiff was not able to do her past relevant work. However, the ALJ also found that she was not disabled because she was able to do other jobs that exist in significant numbers in the economy.

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff and is confined to the relevant time period. In view of plaintiff's arguments, the Court will omit a discussion of the medical evidence.

1. **Agency Forms**

Plaintiff was born in 1973 and was 38 years old on the alleged onset date of August 29,

2011.  (Tr. 176).

Plaintiff stated in a Disability Report that she was unable to work because of problems with her neck, shoulder and back, as well as anxiety.  (Tr. 179).  She had worked in the past as a case manager in a substance abuse/mental health treatment facility, a driver, a manager of a gas station, and a support manager at Walmart.  (Tr. 202).

### 2. Evidentiary Hearing

Ms. Spriggs was represented by an attorney at the evidentiary hearing in January 2014.  (Tr. 40).  She is represented by a different attorney in this Court.

At the outset of the vocational expert's (VE's) testimony, the ALJ said, "You're going to testify in accordance with the information contained in the *Dictionary of Occupational Titles*, [and] *Selected Characteristics of Occupations*.  If there is a difference between your testimony and the information in those sources, you're going to let us know.  Correct?"  The VE replied, "Correct."  (Tr. 62-63).

The VE testified that plaintiff's past jobs were skilled or semi-skilled and were generally performed at the light or medium exertional level.  (Tr. 64-65).

The ALJ asked the VE a hypothetical question which conformed to the ultimate RFC assessment.  As is relevant to the arguments made by plaintiff here, the hypothetical question included limitations to a sit/stand option at will and no overhead reaching with the left (non-dominant) hand.  The ALJ noted that a sit/stand option is "not covered by the DOT."  The VE testified that this person would not be able to do any of plaintiff's past work.  (Tr. 65).

The ALJ asked whether there were other jobs that this person could do at the unskilled level.  The VE testified that she could do unskilled jobs in the "bench work" category.  Examples of such jobs are inspector, DOT 726.684-050; table worker, DOT 739.687-182; and assembler, DOT 713.687.018.  She could also do jobs outside the bench work category.  Examples are order

clerk, DOT 209.567-014; and charge account clerk, DOT 205.367-014.  (Tr. 66-67).

Plaintiff's counsel asked no questions of the VE.  (Tr. 68).

## Analysis

As was noted above, at step five of the sequential analysis, if the claimant is not able to perform her past work, the Commissioner bears the burden of showing that she is capable of performing other work that exists in significant numbers in the economy.

In making the step five determination, the ALJ generally relies on the DOT for information about the typical characteristics of jobs as they exist in the economy.  An  ALJ is required to take administrative notice of job information contained in various publications, including the DOT, published by the Department of Labor.  See, 20 C.F.R. §404.1566(d)(1).  The ALJ often also relies on testimony from a VE to "supplement the information provided in the DOT by providing an impartial assessment of the types of occupations in which claimants can work and the availability of positions in such occupations."  *Weatherbee v. Astrue,* 649 F.3d 565, 569 (7th Cir. 2011).

When a VE testifies, the ALJ is required to ask the VE whether there are any conflicts between her testimony and the information in the DOT:

> Occupational evidence provided by a VE or VS [vocational specialist] generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

SSR-004p, 2000 WL 1898704, at *2.

Pursuant to SSR-004p, an ALJ has an affirmative duty to ask the VE whether her testimony conflicts with information contained in the DOT.  *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006).

6

Here, at the start of the VE's testimony, ALJ Armstrong asked the VE to identify any differences between her testimony and the information contained in the DOT and its companion publication, the *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*, also published by the Department of Labor. Plaintiff acknowledges that the ALJ made this request, and she acknowledges that the ALJ recognized that the DOT is silent on the issue of a sit/stand option. See, Doc. 15, p. 8. Plaintiff argues that the ALJ erred in failing to resolve a conflict between the DOT and the VE's testimony regarding the sit/stand option, and in failing to identify and resolve a conflict between the DOT and the VE's testimony on the overhead reaching requirements of the jobs identified by the VE.

The VE was obviously aware that the DOT does not contain any information regarding a sit/stand option. No one at the hearing discussed whether the DOT contains information regarding bilateral overhead reaching requirements. In fact, while the DOT specifies whether the frequency with which a job requires "reaching," it does not specify requirements for reaching in any direction, including overhead, and it does not specify whether reaching with both arms is required. See, Doc. 15, pp. 8-9.

At the hearing, plaintiff's counsel did not point out any conflict between the VE's testimony and the DOT. Counsel asked no questions at all of the VE. Therefore, in this Court, plaintiff "now has to argue that the conflicts were obvious enough that the ALJ should have picked up on them without any assistance, for SSR 00–4p requires only that the ALJ investigate and resolve *apparent* conflicts between the VE's evidence and the DOT." *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008), citing *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006)[emphasis in original].

Relying on a case from the Eighth Circuit, *Moore v. Colvin*, 769 F.3d 987 (8th Cir. 2014), plaintiff argues that there is a conflict between the VE's testimony and the DOT when the

7

hypothetical question contains limitations that are not discussed in the DOT. Defendant counters that a nonprecedential case from the Seventh Circuit, *Zblewski v. Astrue*, 302 F. App'x 488 (7th Cir. 2008), holds the opposite.

In *Zblewski*, the ALJ asked the VE a hypothetical question that included a limitation to a sit/stand option. The ALJ there did not ask the VE whether his testimony conflicted with the DOT. Plaintiff argued that the ALJ erred because he failed to resolve the inconsistency between the VE's testimony and the DOT, based on the absence of a definition in the DOT of a sit/stand option. Noting that the ALJ has a duty to enquire into and resolve *apparent* conflicts, the Seventh Circuit disagreed, holding that "Because the DOT does not address the subject of sit/stand options, it is not apparent that the testimony conflicts with the DOT." *Zblewski,* 302 F. App'x at 494.

Defendant reads *Zblewski* to mean that there is no conflict between the VE's testimony and "the occupational information supplied by the DOT" if the DOT does not supply such information. See, Doc. 21, p. 3. In the Court's view, this is too broad a reading. First, of course, *Zblewski* is a nonprecedential case. More importantly, because the conflict had not been identified at the hearing in *Zblewski*, the issue before the Court was whether the conflict was apparent such that, under *Overman, supra*, the ALJ had a duty to enquire into the conflict. In that context, the Seventh Circuit's holding, quoted above, is more properly read as meaning that the conflict was not apparent, and not, as defendant would read it, that there was no conflict.

Moreover, this Court's reading of *Zblewski* is in line with SSR 00-4p. In the section of the SSR entitled "Reasonable Explanations for Conflicts (or Apparent Conflicts) in Occupational Information," the agency gives two examples of "reasonable explanations for such conflicts." The first example involves evidence from a VE which includes "information not listed in the DOT." The second example is "The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific

8

settings. A VE, VS, or other reliable source of occupational information may be able to provide more specific information about jobs or occupations than the DOT." SSR-004p, 2000 WL 1898704, at *2-3. Thus, it would appear that the agency's own interpretation is that there is a conflict between the VE's testimony and the DOT where the VE testifies about information that is not contained in the DOT.

The ALJ recognized at the hearing that the DOT does not address a sit/stand option at all. Plaintiff argues here that the ALJ erred because he did not ask questions to resolve the conflict and did not identify any basis for the VE's testimony that the identified jobs could be performed by a person who needs a sit/stand option.

ALJ Armstrong asked the VE to assume a "sit/stand option at will." (Tr. 65). The ALJ must specify the frequency with which the plaintiff would need to change positions; the language used by the ALJ in the hypothetical question here was sufficient. *Arnett v. Astrue*, 676 F.3d 586, 593 (7th Cir. 2012), and cases cited therein. However, the VE's testimony suggested that she was not applying an option to change positions literally "at will." Before identifying jobs in response to the hypothetical question, she observed:

> Right. I would say most in terms of the kind of more what they characterize as – I don't think really the other would affect any of the unskilled sedentary. And the at will, usually, you know, a person has to have some position of some duration. If it's up and down every five minutes it's more production, pace and not able to kind of maintain some sort of productivity.

Tr. 67.

The meaning of the above testimony is murky at best. The ALJ's follow-up question only served to muddy the water even further:

> Q: Say same individual had difficulty in maintaining a position or again concentrating to the extent that she'd be off task an average of 15 minutes out of every hour. Would that knock her out of those jobs or any other jobs?
>
> A: Yes. Tr. 67-68.

9

Thus, while the ALJ asked the VE to assume a "sit/stand option at will," and found in the RFC assessment that plaintiff "requires a sit/stand option at will," it appears that the VE was applying a more restricted sit/stand option. The ALJ failed to clarify whether the jobs identified by the VE could be done by a person who required the option to change positions at will.

In addition, the ALJ failed to ask the VE for the basis of her testimony about a sit/stand option. Obviously, the basis of her testimony cannot be the DOT. The testimony of a VE can constitute substantial evidence to support the ALJ's step five finding, but only if that testimony is reliable. *McKinnie v. Barnhart*, 368 F.3d 907, 910 (7th Cir. 2004). Although the Federal Rules of Evidence do not apply in administrative proceedings, expert witnesses still must use "reliable methods" to arrive at their conclusions. "If the basis of the vocational expert's conclusions is questioned at the hearing, however, then the ALJ should make an inquiry (similar though not necessarily identical to that of Rule 702 [Federal Rules of Evidence]) to find out whether the purported expert's conclusions are reliable." *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002). Here, the VE's testimony regarding a sit/stand option was confused and contradictory, and the basis of her testimony should have been explored.

The conflict between the VE's testimony and the DOT regarding the reaching requirements of the identified jobs was not identified at the hearing. According to the DOT, all of the jobs identified by the VE require reaching either frequently or constantly. The ALJ limited plaintiff to no overhead reaching with her left arm. Despite agreeing to alert the ALJ to any conflicts between her testimony and information contained in the DOT, the VE did not tell the ALJ that the DOT does not specify whether reaching includes overhead reaching, and does not specify whether a job requires the ability to reach with both arms.

Defendant's argument that there was no conflict based on *Zblewski, supra,* is again rejected. Her argument is even weaker regarding reaching because, unlike a sit/stand option, the DOT is not completely silent on reaching requirements. In *Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006), the ALJ failed to ask whether the VE's testimony conflicted with the DOT. One of the limitations in issue was a reaching limitation. The Seventh Circuit held that the ALJ has an affirmative duty to enquire about conflicts with the DOT. The Court noted, "It is not clear to us whether the DOT's requirements include reaching above shoulder level, and this is exactly the sort of inconsistency the ALJ should have resolved with the expert's help." *Prochaska*, 454 F.3d at 736. This language suggests that the VE's testimony here conflicted with the DOT. This type of conflict falls into the second example given in SSR 00-4p, i.e., the DOT identifies the maximum reaching requirements of jobs, but not the specific reaching requirements that are required by a specific job in a specific setting.

Of course, plaintiff's counsel did not raise the conflict at the hearing, and plaintiff therefore cannot raise it here unless the conflict was obvious enough that the ALJ should have recognized it without any prompting from plaintiff. *Overman,* 546 F.3d at 463. An ALJ who routinely handles social security disability hearings presumably has a working knowledge of DOT job descriptions; he should know that those descriptions specify the frequency of reaching but not the direction and not whether bilateral reaching is required. Accordingly, when a VE testifies that a particular job can be performed by a person who is limited to no reaching with one arm in a particular direction, it should be obvious to the ALJ that the VE's testimony conflicts with the DOT.

Because the ALJ's decision was not supported by substantial evidence, this case must be remanded. Remand is required where, as here, the decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th

Cir. 2010).

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that Ms. Spriggs is disabled or that she should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

### Conclusion

The Commissioner's final decision denying Susan L. Spriggs' application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is **DIRECTED** to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

DATE:  12/21/2016

                                              *s/J. Phil Gilbert*
                                              **J. PHIL GILBERT**
                                              **DISTRICT JUDGE**